<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VALERIE S., <br><br>            Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br>            Defendant. | Civil Action No. 2:20-cv-18216 (SDW) <br><br> **OPINION** <br><br> March 31, 2022 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Valerie S.'s ("Plaintiff")[1] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Peter Lee's ("ALJ Lee") denial of Plaintiff's claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper pursuant to 28 U.S.C § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ Lee's factual findings are supported by substantial evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

---

[1] Plaintiff is identified only by her first name and last initial in this opinion, pursuant to Chief District Judge Freda Wolfson's Standing Order 2021-10, issued on October 1, 2021, *available at* https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf.

1

I. **PROCEDURAL AND FACTUAL HISTORY**

   A. **Procedural History**

Plaintiff filed for DIB on June 1, 2017, alleging disability beginning February 24, 2016. (*See* D.E. 6 (Administrative Record ("R.") at 185–190.)  The claim was initially denied on October 5, 2017, and upon reconsideration on March 27, 2018. (R. 120–24, 126–28.)  At Plaintiff's request, Plaintiff received a hearing before ALJ Lee on July 2, 2019, and the ALJ issued his opinion on September 17, 2019, finding that Plaintiff was not disabled. (R. 15–26, 35–65.)  The Appeals Council denied Plaintiff's request for review on October 6, 2020, making the ALJ's decision the final decision of the Commissioner. (R. 1–6.)  Plaintiff subsequently filed the instant appeal in this Court. (D.E. 1.)  The parties timely completed briefing and Plaintiff did not file a reply. (D.E. 7, 8.)

   B. **Factual History**

Plaintiff has a date of birth of August 16, 1961. (R. 185.)  Plaintiff has up to a tenth-grade education and did not complete any type of specialized job training, trade, or vocational school. (R. 38, 211.)  Plaintiff worked part-time as a food service worker, which is skilled work performed at a light level of exertion. (R. 38, 57.)  Plaintiff's job required her to walk six hours, stand six hours, sit two hours, and frequently lift food up to twenty-five pounds daily. (R. 212.)  Plaintiff alleges she stopped working full-time due to herniated discs, spondylolisthesis, spinal stenosis, bulging discs, lumbar radiculopathy, and neuropathy. (R. 41, 81.)  The following is a summary of the relevant medical evidence in the record.

   C. **Medical History**

On or about January 6, 2016, Plaintiff sought pain management treatment for lower back pain with Dr. Asma Siddiqui, M.D. (R. 347–49.)  Upon physical examination, Dr. Siddiqui noted

that Plaintiff's gait was nonantalgic with no assistive device being used. (R. 349.) Dr. Siddiqui further noted that Plaintiff had a decreased range of motion and positive straight leg test. (R. 348–49.) Plaintiff had popping with hip external rotation. (R. 349.) Plaintiff was recommended to continue using pain medication, a back brace, and receiving physical therapy treatment. (*Id.*) Dr. Siddiqui further recommended epidural injections and neurological consultation because treatment with narcotic pain medication would not be prescribed "forever." (*Id.*) Examination notes from February 2016 to April 2016 showed that Plaintiff's condition remained unchanged. (R. 349–60.) While Plaintiff had decreased range of motion and positive straight leg test, Plaintiff had 5/5 strength and no sensation deficits. (R. 349, 351–352, 354, 357, 360.) Again, Plaintiff's gait was nonantalgic with no assistive device being used. (R. 349, 351, 354, 357, 360.) Plaintiff reported good pain relief with Opana and that the back brace had been helpful but was not willing to try the recommended treatment with epidural injections. (R. 347, 350, 352–53, 355–56, 358.) An MRI of Plaintiff's lumbar spine, dated April 25, 2016, showed bilateral spondylolysis of L5 with grade two to three spondylolisthesis at L5-S1, resulting in severe bilateral foraminal stenosis. (R. 768–69.)

In June 2016, Plaintiff sought neurological consultation with Dr. Michael G. Nosko, M.D. (R. 311–12.) Dr. Nosko noted diminished sensation and reflexes on examination, but Plaintiff had normal power and her straight leg raising was negative. (R. 311.) Dr. Nosko found that Plaintiff's MRI showed spondylolisthesis and bilateral pars defects. (*Id.*) Thereafter, on July 12, 2016, Plaintiff visited Dr. Marc A. Cohen, MD, FAAOS, FACS ("Dr. Cohen") for a spinal surgical evaluation. (R. 337.) Dr. Cohen observed that Plaintiff had normal gait with difficulty on [two] heel walking. (*Id.*) Examination of Plaintiff's lumbar spine range of motion revealed, *inter alia*, that Plaintiff had pain from forward flexion to 20 degrees of extension, decreased sensation,

3

positive straight leg raises, and physiological range of motion of the hips. (*Id.*) Based on physical examination and Plaintiff's MRI, Dr. Cohen diagnosed Plaintiff with II-III spondylolisthesis at L5-S1 and lumbar spinal stenosis with S1 impingement. (*Id.*) Dr. Cohen recommended the following treatment options: (1) continue with nonsurgical options under the care of her chiropractic; (2) continue with conservative care with respect to trial treatment with respect to pain management injections to see if she can get further relief of her symptoms and avoid surgical intervention; and (3) if complaints and symptoms became unmanageable, Plaintiff would benefit from lumbar decompression and anterior/posterior surgical stabilization. (*Id.*)

At Dr. Siddiqui's recommendation, Plaintiff sought a third opinion with Mark R. McLaughlin, M.D., in September 2016. (R. 335.) Dr. McLaughlin observed that Plaintiff's lumbar flexion was to 90 degrees without difficulty, but with facet-loading and radicular symptoms on the right. (*Id.*) Dr. McLaughlin further noted that Plaintiff's straight leg raise was negative, sensation was intact, and had 5/5 strength in all major muscle groups. (*Id.*) Upon physical examination and review of Plaintiff's MRI, Dr. McLaughlin diagnosed Plaintiff with spondylolisthesis. (R. 335–36.) Dr. McLaughlin concluded that surgical intervention was not recommended due to Plaintiff's use of narcotics to treat pain but would consider Plaintiff for surgery in the future if she was completely off narcotics for at least six months. (R. 336.)

For the next several months, Plaintiff continued treatment with Dr. Siddiqui through November 2017. (R. 361–418.) Plaintiff continued to report back pain that radiated into the legs, with leg cramping and right leg buckling. (R. 361–418.) Plaintiff continually noted to walk well, improvement with activities of daily living, and improved pain scores. (R. 401–02, 404–05, 407.) However, Plaintiff noted to have increased pain in the right buttock and cramps in the right hip and right calf. (R. 401–02, 404–05, 407.) Plaintiff began ambulating with a cane in September

2017. (R. 410.) Examination notes continued to show that Plaintiff had a decreased range of motion and a positive straight leg test. (R. 361–418.) Plaintiff had full 5/5 strength and nonantalgic gait with no assistive device being used. (R. 361–418.) Dr. Siddiqui's recommendations remained the same and Plaintiff continued to refuse injections. (*Id.*)

On September 28, 2017, Plaintiff was referred to see consultative examiners, Rashel Potashnik, M.D. FAAPMR ("Dr. Potashnik") and Betty Vekhnis, M.D. FAAPMR ("Dr. Vekhnis"). (R. 330–31.) Plaintiff reported lower back pain; right leg numbness, stinging, and burning; and inability to sit or stand due to lower back pain. (R. 330.) Upon physical examination, Dr. Potashnik noted that Plaintiff "entered the office without [an] assistive device with normal gait", could squat, and walk on heels and tiptoes. (*Id.*) Plaintiff's upper extremities exam revealed normal ROM, strength, and sensation. (R. 331.) Lower extremities exam revealed normal ROM, strength, and decreased sensation in the right lateral leg and foot and unobtainable MSR from the right ankle. (*Id.*) Dr. Potashnik determined that Plaintiff did not use a hand-held device and could walk at a reasonable pace. (R. 333.)

In July 2017, chiropractor Joseph Seeman completed a medical assessment finding that Plaintiff was "disabled at this time." (R. 770–76.) Dr. Seeman opined that Plaintiff could sit, stand, and walk for less than two hours and occasionally lift and carry less than ten pounds in an eight-hour workday. (R. 771.) Similar functional limitations were found by Dr. Siddiqui in August 2017 and December 2017 concluding that Plaintiff was disabled. (R. 325–27, 344–46.)

Plaintiff continued routine monthly visits with Dr. Siddiqui, with examinations remaining unchanged. (R. 427–79.) By June 2018, Dr. Siddiqui discussed reducing pain medication due to new opioid regulations. (R. 445.) Plaintiff's condition remained unchanged until November 2018, when Plaintiff alleged severe cramping in both legs and severe pain in the tailbone. (R. 444–61.)

In December 2018, it was noted that she was having difficulty coping with the decrease in her medications and her pain was progressing. (R. 462–67.) By April 2019, Plaintiff was recommended to use a cane for balance. (R. 477–79.) In May 2019, Dr. Siddiqui opined, among other things, that Plaintiff was disabled. (R. 480–83.)

### D. State Agency Expert Opinions

On October 4, 2017, state agency physician Arthur Pirone, M.D., reviewed the record and found that Plaintiff could perform light work. (R. 87.) Dr. Pirone determined that Plaintiff's statements regarding her symptoms were not consistent with the total medical and non-medical evidence. (R. 85.) Dr. Pirone found that Plaintiff was able to stand, walk, sit, and use her upper extremities; could occasionally lift twenty pounds; frequently lift ten pounds; sit, stand, or walk six hours in an eight-hour day. (R. 86.) Based upon this, Dr. Pirone determined that Plaintiff was not disabled. (R. 87–88.)

On December 26, 2017, Joseph Udomsaph, M.D., reviewed the record and found that Plaintiff could occasionally lift twenty pounds; frequently lift ten pounds; sit, stand, or walk six hours in an eight-hour day; occasionally climb ramps, stairs, ladders, and ropes; occasionally stoop, kneel, crawl, and crouch; and frequently balance. (R. 97–98, 109–10.) Dr. Udomsaph found that Plaintiff's statements regarding the intensity, persistence, and functionally limiting effects of the symptoms were not substantiated by the objective medical evidence alone. (R. 96–97, 108–09.)

On January 18, 2018, medical consultant George Cross, M.D., reviewed Plaintiff's residual functional capacity assessments by the Disability Determination Services. (R. 421–422.) Dr. Cross found that "the DDS reasonably assessed the consistency of the claimant's statements about

her symptoms with the medical evidence and reasonably addressed the pain management provider's opinion that is not consistent with the evidence from the recent CE." (R. 421.)

 **E. Hearing Testimony**

At the administrative hearing on July 2, 2019, Plaintiff was represented by counsel. (R. 33–65.) ALJ Lee heard testimony from Plaintiff and an impartial vocational expert, Robin A. Cook ("VE Cook"). (*See generally* R. 33–65.)

Plaintiff testified that she had not worked at all since June 2012, due to spine, leg, and hip problems. (R. 38, 41–42.) Plaintiff reported pain radiating from her spine into her leg, with the pain being an 8/10 or 9/10. (R. 41–42.) Plaintiff testified that she used a cane to walk and stand due to weakness in her legs. (R. 46–47.) Plaintiff stated that she could sit for about twenty minutes, stand for less than five minutes without an assistive device, squat, and climb stairs while holding on. (R. 48–50.) Plaintiff testified that she could drive fifteen minutes to her doctor, do light grocery shopping, and lift and carry up to ten pounds. (R. 51, 53–54.) Plaintiff reported that she would not be able to do a simple job because of her leg pain and legs giving out. (R. 54.) Plaintiff testified to taking medication for pain and that treatment from a chiropractor aggravated her condition. (R. 45.)

VE Cook testified that the most appropriate classification for Plaintiff's past relevant work would be a manager of a cafeteria or lunchroom pursuant to Dictionary of Occupational Titles ("DOT") 187.167-106, which was skilled exertional level light work. (R. 57.) VE Cook testified that this job would be performable at a light exertional level consistent with the residual functional capacity addressed in the ALJ's hypotheticals. (R. 57–58.) While Plaintiff testified to performing this job at a medium level of exertion, VE Cook testified that this job was likely performed at a lower level of exertion because Plaintiff did not perform "the whole gamut of administrative or

supervisory duties normally associated with this title." (R. 57.) VE Cook testified that there were jobs with direct transferable skills in the national economy that could be performed with light level of exertion: counter attendant cafeteria and food order expediter. (R. 60.) VE Cook further stated that a hypothetical individual with certain limitations (i.e., use of a handheld device for walking; off task 15% or more of the workday or absent from work three or more days; or need to elevate the leg thirty degrees off the floor) would not be able to perform their past relevant work, jobs with transferable skills, or any other jobs in the national economy. (R. 62–65.)

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being

supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

### B. The Five-Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous

work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to

work.  20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p.  An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If a severe impairment or combination of impairments is not found, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's RFC.  20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e).  An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments.  20 C.F.R. §§ 404.1545, 416.945.  The ALJ considers all impairments in this analysis, not just those deemed to be severe.  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p.  After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work.  20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).  If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act.  20 C.F.R. §§

404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).  If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).  If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III.  DISCUSSION

### A. The ALJ's Decision

On September 17, 2019, ALJ Lee issued a decision concluding that Plaintiff was not disabled from February 24, 2016, the alleged onset date, through December 31, 2017, the date last insured.  (R. 25.)  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of February 24, 2016 through her date last insured of December 31, 2017.  (R. 20.)  At step two, the ALJ found that Plaintiff had the following severe impairments through the last date insured: degenerative disc disease with radiculopathy (with associated TMJ and headaches), spondylolisthesis, and stenosis.  (*Id.*)

At step three, the ALJ concluded that Plaintiff's impairments, individually and in combination, did not meet or medically equal the severity of any medical listing.  (R. 21.)  In particular, the ALJ evaluated Plaintiff's impairments under Medical Listing 1.04. Medical Listing 1.04 requires that a disorder of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis,

spinal stenosis, degenerative disc disease) "results in a compromise of a nerve root (including the cauda equina) or the spinal cord[,]" with:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00 B2b.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.04.

Pursuant to medical listing 1.00(B)(2)(b), the "inability to ambulate effectively means an extreme limitation of the ability to walk" requiring the use of a hand-held device that limits the function of both extremities.

Based upon the record, the ALJ found that Plaintiff's impairments did not meet the requirements of Listing 1.04 because Plaintiff's medical diagnostic imaging and physical examinations did not show nerve root compression (as required by 1.04A), spinal arachnoiditis (as required by 1.04B), and lumbar spinal stenosis resulting in the inability to ambulate effectively (as required by 1.04C) during the relevant period. (R. 21–24.) ALJ Lee cited, *inter alia*, Dr. Siddiqui's January 2016 treatment notes showing that Plaintiff's gait was nonantalgic and no assistive device was being used; Dr. McLaughlin's September 2016 treatment notes demonstrating that Plaintiff had 5/5 strength with normal strength in all major muscle groups and a negative straight leg test; and Dr. Potashnik's September 2017 examination notes establishing that Plaintiff had a normal range of motion and strength in her upper and lower extremities. (R. 21–25.) While Plaintiff's

13

April 2016 MRI showed bilateral spondylolysis of L5 with grade two to three spondylolisthesis at L5-S1, resulting in severe bilateral foraminal stenosis, the April 2016 MRI did not list nerve root compression required for Listing 1.04A or spinal arachnoiditis required for Listing 1.04B. (R. 768–69.)  Further, the ALJ acknowledged that Plaintiff consistently refused treatment with epidural injections and received inconsistent recommendations with regard to surgery. (R. 25.)

Assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform light work with the following limitations:

> [Plaintiff] can never climb ropes, ladders or scaffolds; never be exposed to unprotected heights; occasionally climb stairs and ramps; never crawl; occasionally kneel; occasionally stoop and crouch; frequently balance.

(R. 21.)

At step four, the ALJ found that Plaintiff was capable of performing past relevant work as a cafeteria manager through the last date insured.[2] (R. 25.)  Evaluating Plaintiff's RFC, ALJ Lee and VE Cook found that Plaintiff could perform work as a cafeteria manager as normally performed. (*Id.*)  Based on the foregoing, the ALJ determined that Plaintiff was not disabled. (*Id.*)

**B. Analysis**

On appeal, Plaintiff seeks reversal or remand of the Commissioner's decision. (*See generally* D.E. 7.)  First, Plaintiff argues that the ALJ erred by not considering Plaintiff's claims of "neuropathy" as a separate severe impairment at steps two and three of the sequential evaluation process. (D.E. 7 at 37–38.)  Second, Plaintiff argues that the ALJ's determination that Plaintiff's impairments did not meet or medically equal the severity of Listing 1.04 was not based on substantial evidence. (D.E. 7 at 29–33.)  Third, Plaintiff argues that the ALJ did not give proper

---

[2] The ALJ explained that Plaintiff "has past work as a manager (cafeteria) (DOT 187.167-106, SVP 7, light), but performed as (SVP 6, medium)." (R. 25.)

weight to Plaintiff's treating physicians and medical evidence resulting in a flawed RFC. (D.E. 7 at 33–37.) This Court considers the arguments in turn and finds each unpersuasive.[3]

### A.

Plaintiff argues that the ALJ erred by not considering Plaintiff's claim of "neuropathy" as a separate severe impairment. (D.E. 7 at 37–38.) An ALJ's decision should be "read as a whole," *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004), and ALJs are not required to discuss or list every impairment or diagnosis in the record, *see Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (stating that the erroneous identification of certain severe impairments as non-severe is harmless where the ALJ otherwise finds in claimant's favor at step two). The step two decision is a threshold analysis, and once the ALJ finds any one impairment severe, he may move on to consider all impairments, severe or not, at subsequent steps. *See Desando v. Astrue,* Civ. No. 07-1823, 2009 WL 890940, at *5 (M.D. Pa. Mar. 31, 2009); *Bliss v. Astrue*, Civ. No. 08-980, 2009 WL 413757, at *1 n.1 (W.D. Pa. Feb.18, 2009).

Here, Plaintiff's contention that the ALJ erred in not considering Plaintiff's alleged "neuropathy" as a separate severe impairment is not a legally relevant question because the ALJ proceeded beyond step two of the sequential evaluation process finding that Plaintiff's degenerative disc disease with radiculopathy, spondylolisthesis, and stenosis were severe impairments. (R. 20–25.) At the later steps, the ALJ considered the entire record, including Plaintiff's subjective complaints of pain in her legs, back, and spine. (R. 21–25.) Reading the

---

[3] Plaintiff's argument that the ALJ's opinion was inconsistent with VE Cook's expert testimony is without merit. (D.E. 7 at 39–40.) The ALJ reasonably concluded that the VE's testimony supported a finding that Plaintiff was able to perform her past work as a cafeteria manager. The ALJ specifically compared Plaintiff's RFC with the physical and mental demands of the work of a cafeteria manager, explaining that this work did not require the performance of work-related activities precluded by the claimant's RFC. (R. 25, 57–65.) At the hearing, Plaintiff was represented by counsel who had every opportunity to address any alleged issues with the hypothetical questions posed to VE Cook.

decision as a whole, it is evident that Plaintiff's impairments were incorporated into the ALJ's evaluation of Plaintiff's RFC. (R. 21–25.)

Moreover, Plaintiff's argument that the ALJ erred in not considering Plaintiff's claim of "neuropathy" as a separate severe impairment is without merit because Plaintiff's claim of "neuropathy" was not a medically determinable impairment.[4] (*See generally* R. 80–778.) To prove at step two that an alleged impairment is medically determinable, the claimant must present evidence that the impairment is an "anatomical, physiological, or psychological abnormalit[y] which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. Here, Plaintiff has pointed to no objective medical evidence—not one medical opinion—establishing that she was diagnosed with neuropathy. (D.E. 7 at 37–38.) The medical records from the relevant period support a diagnosis of degenerative disc disease with radiculopathy, spondylolisthesis, and stenosis as medically determinable impairments, not neuropathy. (*See generally* R. 80–778.) Accordingly, Plaintiff's argument is rejected.

**B.**

Plaintiff contends that the "ALJ disregarded substantial evidence of record in making his determination that the [P]laintiff did not meet or equal listing 1.04 Disorders of the spine." (D.E. 7 at 29–33.) Plaintiff specifically focusses on the ALJ's analysis of the medical records pertaining to her spine and contends that the ALJ disregarded an April 2016 MRI of the lumbar spine, Dr. Seeman's treatment notes, and Dr. Potashnik's examination notes. (D.E. 7 at 29–33.) Plaintiff's argument is unavailing.

---

[4] To the extent that Plaintiff argues that the ALJ should have considered Plaintiff's alleged claim of "neuropathy" under Listing 11.04 for Peripheral Neuropathy, Plaintiff's argument fails. Plaintiff points to no evidence in the record establishing that she could meet the requirements for that Listing. (D.E. 7 at 37–38.)

The listings are a regulatory device used to streamline the decision-making process by identifying those claimants whose impairments are so severe that they are presumed disabled. *See Sullivan v. Zebley*, 493 U.S. 521, 532–33 (1990). The listings define impairments that would prevent an adult from performing any gainful activity, not just substantial gainful activity, and their criteria are therefore set at a higher level than the statutory standard for disability. *See id.* (citations omitted). The claimant has the burden of proving a presumptively disabling impairment under the listings by presenting medical findings that either meet all of the criteria of a listed impairment or are equal in severity to all of the criteria for a listed impairment. *Id.* at 531 (citations omitted). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530.

Here, the ALJ fully articulated his reasoning in determining that Plaintiff's impairments did not meet the requirements of Listing 1.04. (R. 21–25.) The ALJ cited to medical diagnostic imaging and physical examinations in the record indicating, *inter alia*, that Plaintiff had normal gait with no assistive device being used; 5/5 strength with normal strength in all major muscle groups; and a normal range of motion and strength in her upper and lower extremities. (R. 21–25.) The ALJ addressed each of the criteria required under the Listing and provided adequate rationales to support his findings. (R. 21–25.) It is apparent from the opinion that the ALJ discussed and considered Plaintiff's MRI of the lumbar spine, Dr. Seeman's treatment notes, and Dr. Potashnik's examination notes in making his determination that Plaintiff did not meet or equal the severity of Listing 1.04. (R. 21–25.) Specifically, the ALJ discussed the results of the April 2016 MRI showing bilateral spondylolysis of L5; Dr. Seeman's treatment notes discussing Plaintiff's condition; and Dr. Potashnik's examination notes confirming Plaintiff's S1 radiculopathy and chronic lower back pain. (R. 22–24.) ALJ Lee thoughtfully considered the

17

medical diagnostic testing, Dr. Seeman and Dr. Potashnik's examinations, and other medical assessments and provided cogent reasons for finding that Plaintiff did not meet or equal the criteria for Listing 1.04.

### C.

Plaintiff argues that the ALJ did not give proper weight to Plaintiff's treating physicians and medical evidence resulting in a flawed RFC. (D.E. 7 at 33–37.) When evaluating a Plaintiff's claim, an ALJ considers the persuasiveness of medical opinions and "will explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the claimant's] determination or decision." 20 C.F.R. § 404.1520c(b)(2), (c)(1)–(5). However, "[a]n ALJ need not defer to a treating physician's opinion about the ultimate issue of disability because that determination is an administrative finding reserved to the Commissioner." *Gantt v. Comm'r Soc. Sec.*, 205 Fed. Appx. 65, 67 (3d Cir. 2006) (citing 20 C.F.R. § 404.1527(e)). Importantly, the Third Circuit has held that an inconsistency between a Plaintiff's daily living activities and a medical opinion is a legitimate basis to discredit the opinion. *See, e.g.*, *Hubert v. Comm'r of Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018); *Russo v. Astrue*, 421 F. App'x 184, 191 (3d Cir. 2011).

Here, in assessing Plaintiff's RFC, the ALJ provided a sufficient narrative discussion of Plaintiff's entire medical record during the alleged period of disability. (R. 21–25.) ALJ Lee carefully considered the record in light of Dr. Siddiqui and Dr. Seeman's findings of "disabled" and found their opinions non-persuasive because "they are not supported by objective evidence and are not consistent with the overall record evidence." (R. 24–25, 325–27, 344–46, 770-776.) Specifically, the ALJ discussed that Plaintiff was taking prescription pain medication and that Plaintiff noted some improvements in function with the use of pain medication. (R. 22–25, 347–

418.) While symptoms increased when pain medication reduced, Plaintiff consistently refused other recommended treatment with injections. (R. 22–25, 347–418.) Plaintiff was not medically prescribed to use a cane during the relevant period. (R. 410.) The ALJ noted that despite her limitations, Plaintiff continues to be able to prepare simple meals and travel alone, which "belie a complete inability to work." (R. 25, 220–27.)

Further, the ALJ analyzed Plaintiff's subjective complaints of disabling pain. "Allegations of pain and other subjective symptoms must be supported by objective medical evidence." *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (citation omitted). An ALJ may discount a claimant's allegations about the intensity, persistence, or limiting effects of his symptoms where the evidence does not fully support those allegations, and "need only include in the RFC those limitations which he finds to be credible." *Salles v. Comm'r of Soc. Sec*, 229 F. App'x 140, 147 (3d Cir. 2007) (citations omitted); *see also* 20 C.F.R. §§ 404.1529 and 416.929; *see also* Social Security Ruling 16-3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016). In this matter, ALJ Lee explained that the alleged "intensity, persistence, and limiting effects" of Plaintiff's symptoms were not entirely consistent with the objective medical evidence. (R. 22.) Accordingly, the ALJ properly evaluated Plaintiff's RFC, and the evidence taken as a whole supports the ALJ's decision.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, this Court finds that ALJ Lee's factual findings were supported by substantial credible evidence in the record and that his legal determinations were correct. The Commissioner's determination is therefore **AFFIRMED**. An appropriate order follows.

s/ <i>Susan D. Wigenton</i><br>
<b>SUSAN D. WIGENTON</b><br>
<b>UNITED STATES DISTRICT JUDGE</b>

Orig: Clerk
cc: Parties